Okay, when you're ready. Okay, good morning, your honors. I would like to reserve the two minutes. Okay, and if you could keep your voice up, please. Oh, sure. Can I move these a little closer? Sure, sure. Yeah, although I think they mostly asked for the recording, so you're just going to have to talk loudly. Oh, okay. Sometimes I'm accused of shouting, but I'll raise it. First, I'm going to talk about 42 U.S.C. 1982, which is my main issue of a jury instruction. I don't think that there's any dispute in any of the court situations, the court decisions, that 1982 includes more than the transfer of property by leasing, selling, inheritance. That it also includes a bundle of rights that goes with that property once you have a legitimate lease or you own the property. And what we're arguing about here is a jury instruction that started out by the defendants as perfectly acceptable. Because the last sentence was it protects interference with the rights or benefits connected with the ownership of property. And by the time we were down to the end of the second trial, all it protected was the use of the property, and that was all the jury got. Can you tell me, first off, do we have a transcript of the trial? I did not order the complete transcript of the trial. Okay. Do we have a transcript of closing arguments? I think the answer is no, because I asked my law clerk and he couldn't find it. I suspect not. Okay. The reason I ask it, but given that we don't have a transcript, I guess I can't, I mean, we don't have one. Sometimes a jury instruction can be harmful or not harmful, even if wrong, depending on what the structure of the argument was to the jury. That maybe the jury really doesn't understand, given how, for example, the word use might have been fleshed out during argument or whatever. I take your point that a layperson might understand use of property to mean something quite different from use and enjoyment of property. But I'm a little handicapped in my analysis of this case, given that I don't know what arguments were made to the jury with respect to the language. All right. I was asking the court if I, if the court was, the court actually said I could argue the benefits, but without the imprimatur of the court's authority saying, yes, this is the law, for me to argue that there's benefits would seem to be like I was, the jury would just think that I was pulling it out of my mouth. Well, and then you might have been faced with a very standard instruction from the jury, from the court that says to the jury, what the lawyers say is not the law. Exactly. What I'm going to instruct you is the law. Exactly. And what my last desperate sort of argument, because the defendants argued this down, and I will concede that Mr. Baker is astonishing. He never stopped arguing anything, even when I thought it was settled, was that the court would instruct the jury as to a broad definition of use. And I did not have that either. And it's my belief that if I don't have the court backing me up to argue something, is not a good thing, particularly when I'm trying to argue against what would appear to a reasonable jury to be a transactional statute, that she had a right to lease. She had a lease. End of the question. And so I would be glad to get you the transcript, if that would be helpful. Well, until you hear from us, please don't. Okay. All right. So I just wanted to talk about a few cases here involving that. I talked about the opening brief. One odd thing that happened is that in the first trial, the court allowed me to say that Ms. Gonzalez was also entitled to the benefits of the contract. I mean the benefits of the lease. We actually had a pretrial where Mr. Baker was arguing against that for the second one, and according to my notes, the pretrial was not recorded. The court said, no, you can use the word benefits. And we got to the trial, and there was more argument, and pretty soon I didn't have the word benefits, I'm down to the word use. And if Heritage Ranch ever wants to dispute the quality of the representation that Mr. Baker gave them, I will stand behind him. And finally, we even go back to the old cases, the Sullivan cases, where it says pretty much that this is a broad statute, that a narrow construction of the statute of Section 1982 would be inconsistent with the broad and sweeping nature of the protection to be afforded by the Civil Rights Act, which eventually became Section 1982. I have not been able to find any argument or discussion about why they broke the Civil Rights Act into two pieces. But counsel, Judge Gould, if I may interject a question. Was there an objection to the jury instruction that was given? I felt I objected to the point where I had nothing left to waive. I argued for the word benefits at the very least, and the court ruled against me. At that point, unless I didn't say the right words, I was still in objection, but I don't feel like I had any more choice. My perhaps less aggressive personality is when the court says this is what we're doing, that's where I stop. And you raised the point, the court ruled against you, and you said, okay, I lost that one, and I might or might not take it up on appeal. Okay. Yeah. I mean, I didn't say that at the time, but it seems to me that I'm at the end of my ability to lose anything else. There's nothing left to waive. And then I was looking at Jones v. Mayer, and I gave the court, they referenced the, they again talked about it being broader than would have been necessary to strike down the black codes, the discriminatory statutes, and they referenced the slaughterhouse cases, which I had not seriously looked at. And I went back to look at those for today, and I gave you two pages of the parts that I wanted to reference, and I apologize, I thought I read the instruction and I could submit those afterwards. They were, the ruling was 50 pages because they quoted most of the attorney's arguments before they got to the ruling. And they described on page 69 to 71 of this 1872 cases of all of the issues after the Civil War, of the burdens and the laws that were imposed upon the colored race, onerous burdens and disabilities curtailed their rights in the pursuit of life, liberty, and property, forbidden to appear in towns of any other character than menial servants, and they were required to reside on and cultivate the soil without right to purchase or own it, and so on. And it was after that, it was a result of that, that Congress passed the 14th Amendment. And the slaughterhouse cases were completely in agreement with my argument about 1982, but they were ultimately decided on a slightly different issue, which is whether or not if the 14th Amendment talks about citizens of the United States. Can I talk about something other than the slaughterhouse cases? Oh, please. What I want to talk about is how strong was the evidence on both sides? That is to say, my understanding of what happened at trial is that some of the testimony from your witness was contradicted by the witnesses on the other side. And give me just a flavor of both the evidence from your side and the contradictions from the other. I'm trying to figure out, okay, was this a strong enough case that if the instruction had said not only use, but use and enjoyment, that is a reasonable possibility we might have had a different answer. Yes, I will point out that we did go through a Rule 12b-6 motion at the beginning, a summary judgment. The defendants made a couple of Rule 50 motions, so we survived all the motions to dismiss because the evidence was totally insufficient. The evidence from my side was that I was going to get to the 1983 because the Heritage Ranch Owners Association was dismissed and it was my client versus Mr. Barrera. Mr. Barrera was writing, giving my client citations for things that were not against the rules of the Owners Association. And in some cases, there was an enforcement of the boats not being tied up to the dock for more than 72 hours. Counsel, maybe I'm misinterpreting Judge Fletcher's question, but I believe he was asking you to what extent at trial was there some conflicting testimony about your client's belief that her rights to use and enjoy the benefits of her property was somehow negated by the actions of the association here. I'm just trying to figure out what, because you don't have the transcript, I'm trying to get a sense as to what the evidence was at trial. Well, my evidence was, for example, my client, there was a little gazebo on this property. They called it a pavilion. It was a picnic area. And if you wanted to have a party there, you had to reserve it. If you just went up there and wanted to have lunch, you didn't have to do that. My client got a citation for sitting there and having lunch with her children. She bought an old boat from somebody there for like a dollar down. It was tied to the shore. The rule was you have to use it, or if it's been there longer than 72 hours, it gets ticketed. It was a new thing for her, not a new boat, and she would go out and use it every day. And she would get ticketed every day, every 72 hours, even though she'd been using the boat. And it wasn't like – Was any evidence at trial that she was treated differently? Yes. From other residents? Yes, we had. Based on these? But one of the more interesting things was that once she finally moved her boat, after about six of those tickets, the 72-hours thing stopped. Mr. Barres stopped giving tickets to the boats that were there after the 72 hours. So she was treated differently. There was no evidence that anybody else had ever been cited for use of this pavilion when there wasn't a function that they should have paid for, and there was evidence that my client knew you were supposed to pay for it. But she pointed to specific times when other neighbors might have used the pavilion or stored their boats, similar to her situation, but not ticketed? Exactly, exactly. That's what we're saying. She had surveillance by the security officers of her house, and they would talk about her and her family dealing drugs. They had an investigation. I see your time is running short. I don't want to cut off here right to rebut. But could we get to the summary judgment on the 1983 claim and the issue of to what extent, if any, you raised a fact inquiry that necessitated a trial on that issue? The real issue is actually one word, where it says, Plaintiff does not allege and the evidence does not suggest that the HROA and its security guards have taken over all of the municipal policing functions. And all is not defined, and all of the case law says that they take over functions or they are condoned to use functions that are exclusively the province of the state or the municipality. It doesn't say that they take them over completely. There's nothing in any of the law, including what's in the summary judgment, that says they have to have the complete authority given to them, have SWAT teams and guns and all that. It is a matter of degree that would be a trial on the issue of fact. And the cases that I cited back in the colleges, they certainly didn't have SWAT teams or anything. They had enough security to control things, sort of like a police department, and the courts, and these were back east on the Ninth Circuit, the courts said that was enough that they met the public function test. And that, to my mind, is a question of fact, that the jury should have at least had some ruling, some chance to evaluate the facts and decide whether or not at least they appeared to the jury as enough of a police force that they were doing a public function. Okay. You've got about a minute and a half or so. Why don't we hear from the other side, and then we'll give you a chance to respond. That sounds good, Your Honor. Thank you. And also, I didn't say this, my client is present in the courtroom. Thank you. Good morning, Your Honors, and thank you. On behalf of Heritage Ranch Owners Association, my name is Scott Baker. Mr. Joel Mark is also here. He represents the individual defendants, Frank Barrera and Linda Ritchie. Are you going to split argument, or are you going to? We would like to reserve maybe four or five minutes for Mr. Mark to discuss any issues that the Court may have related directly to his clients. Okay. Try to keep track of your time. Thank you, Your Honor. At the outset, I'd like to say we don't have much disagreement at all regarding the fact that the plaintiff's rights that she was complaining were interfered with included the use of all the facilities, included all the activities that were discussed on and on and on at trial. Okay. Let me ask you it this way. I've got, I'm just reading instructions from two different district courts. One says that the plaintiffs are entitled to rights and benefits. The other says Section 1982 makes it unlawful for either or both the defendants to interfere with ownership or enjoyment. Now, do you disagree with the propositional law that 1982 protects both use and enjoyment? Is that an accurate statement that the law protects both use and enjoyment? Well, I don't think we can say yes definitely because it depends on how you define enjoyment. That's a very subjective term. How about rights and benefits? Rights and benefits I have no problem with. And that was continuously discussed throughout the trial. But it's not in the instruction. Well, we would have been fine with that. And here's how this came down in the context that the court said that, okay, in the court's decision on the new trial motion, the district court indicated that we spent a good deal of time discussing this issue and that while the instruction in the verdict form may not have been perfect, they were correct statements of the law. They weren't misleading. So how come benefit wasn't included because I just heard from your adversary that he wanted benefit and the judge ruled against him? The jury instructions that he submitted that he argued for said enjoyment of the rights and benefits, which is part of the statute in 1981, but it's not found in 1982. And my problem was with the word enjoyment because that seems so subjective that how can we ever guarantee that a plaintiff is going to enjoy these various things? Well, it's a standard term of art in property law, of course. Use and enjoyment is a standard term of art. Well, it may be a property law, but not to a jury. Juries are going to think enjoy means enjoy. And what we asked for consistently, and if you look in the record that you do have, you'll see that in a brief when we were briefing this issue, we specifically asked the court to require the plaintiff to identify the precise interests that she claimed were being interfered with. And we would include those in the instructions. So not only would we not have to deal with what enjoyment meant or what use meant or what benefits meant, we know exactly the thing that she was complaining was interfered with was and the conduct that caused that interference. But this thing has been a moving target ever since this arose more than ten years ago as an issue that was investigated by the Department of Fair Employment and Housing, the FBI, our own association. The claims change. In the first trial it was that we interfered specifically with the lease. Then in the second trial it was we interfered with some property rights, and including these rights to use the facilities as she saw fit under the guidelines and the rules and regulations of the HROM. Let me ask it this way, and I'm not asking you to agree as to the hypothetical facts I'm posing to you. But let's assume that it is a fact. This is an assumption. Let's assume that it is a fact that Ms. Smith had a lease and that the enforcement by the local, I'm not quite sure what to call them, security officers, was discriminatory. That is to say that she was not allowed to have lunch at the gazebo or the pavilion without a permit, whereas white people were allowed to. Let's assume that it is a fact that her boat was ticketed in a way that the boats of the other people on the ranch, the white people, were not. That is to say we're getting clearly disparate treatment based upon race. Would that violate 1982? I'm not asking you to concede that that happened. These are hypothetical facts for the purpose of the question. And actually I would agree with that statement. You would agree that that is a violation of 1982? Yes, I would. Because? Because I agree that the use of the property is more expensive than just having a lease. Because when she signed up to be a tenant out at HROA, she signed some forms. The forms said here's all the facilities we have. Here's all the activities we have. Here's all this. You're free to enjoy them. Now, you have to enjoy them under these rules and regulations that we have. And she agreed to that and she signed. So if the lease itself says you're free to enjoy them, why are you objecting to the use of the word enjoy? The lease didn't say. You just described to me the forms that she signed. Say you're free to enjoy this, you're free to enjoy that. So I'm asking you if that's what the agreement is that she signed, why are you objecting to the use of the word enjoy? That is to say it sounds as though she signed up for enjoyment. That was her right as you described in the document. Well, again, perhaps I'm quibbling too much about the definition of enjoy. I think that is confusing. Use or enjoy was used by the district court seemingly interchangeably. My understanding, and I think that of the district court, was use was more broad. She said you can argue it. He certainly did argue it. I actually have the transcript of it. We never objected. We never disagreed. In fact, in our arguments, Mr. Mark and I both went through some of these opportunities that she had to use the facilities and the fact that she did use the facilities. She even used some of the facilities to an extent that wasn't allowed under the rules and regulations. For instance, driving motorized vehicles in the common area. She would get citations for those things. Now, you just said something that's interesting to me. You said you do have the transcripts of the trial? I do not have the entire transcripts with me. I have an excerpt of the final argument. No, I'm not asking whether you have them. Do the transcripts of the trial exist? Absolutely. So it would not be actually that much trouble for you to supply them to the court, let's just say they've already been typed up and so on? Correct. Okay. As well as the argument that you said you presently have, closing arguments. I have sections of the closing argument from all of us where the issue of use was discussed and it was clear that no one throughout the trial, including closing argument, ever disputed that use included the opportunity to use the facilities under the provisions provided under the rules and regulations of HROA. She would get citations when she violated those rules and regulations, and that was the crux of her complaint, that she shouldn't have. Now, the jury didn't question the term use. They understood it. It was described to them both in argument. And throughout the case, the case wasn't about whether she had a right to the lease or a right to contract or anything. You said described to them this is by the lawyers, by witnesses, but not by the court. Well, the court didn't describe to them specifically those things, although we asked that the court require the plaintiff to come up with specific instances so that we could fashion a very precise or a more precise one, so the jury would have an idea of exactly what they were complaining about. But they didn't do that. They offered two instructions. One said the right to enjoy the benefits of and the right to use as intended. Well, use as intended would have been far more restrictive, because as intended, one, by who? Certainly it couldn't be as intended by Ms. Smith, because then that would give her So we would contend that means intended by HROA's rules and regulations, and she certainly didn't do that. So those were the only two instructions that were proffered by the plaintiff. We took the position, and the court agreed with us, that use was much more broad. And, in fact, that's how counsel described it in his closing argument, that this is a very broad term. And then he described to the jury what it meant to him. And then when we described use, we included all those things. We didn't limit it in any way to the formation of the lease. So I think we're arguing about something, in hindsight, that didn't happen. We're arguing about the inclusion of language that, had they wanted it included specifically to these things that they contend were interfered with, they should have proffered those as part of an instruction. Instead, we gave them unfettered opportunity to argue it and to cite. Okay. Well, let me say, in a way, we've gone over this ground a minute or two ago. Right. But you keep telling me what happened. And let me ask it again, so I'm precise in the question so you can be precise in the answer. Okay. Do you have in your possession the transcript of the entire proceeding at trial? I have the transcripts on my computer. I have the transcripts back at my office. No, no, no. I don't have them with me. No, I sense. But easily available in a form, for example, that if we were to – if the Court were to ask you. Yes. That you and your opposing counsel could agree these are the transcripts from the trial, and you could then supply them to us without the necessity of going to the court reporter or whatever it is. Correct. The court reporter has already prepared them, and they are in my possession. They do exist for the entire trial? Well, I think, as counsel said, there were some things that were included in the trial that were not on the record. So other than those things. Yes. But they're normal transcripts, in other words. Correct. Okay. That's useful. We may decide we want to see those, in which case we'll submit an order. You don't have to guess whether we'll want them. We'll tell you if we want them. Okay. Okay. Thank you. The other thing I'd point out is. Counsel? Yes. Yes. Judge Gould, if I could interject. Sure thing. It seems clear that Smith has a right to use and enjoy her property, but also that the Heritage Ranch Association has a right to enforce its reasonable regulations. What I wondered is, because there is something on both sides of this case, and either you or your colleague have said it's been going on for, you know, a decade, I wanted to know if the plaintiff and the ranch have used the Ninth Circuit's mediation facilities to see if there was any voluntary way to end this. And we, of course, would not require mediation if parties don't voluntarily want to do it. But I just wonder if that's something you have explored. We had a settlement conference with the district court judge that tried the case. And we also, after the filing of the appeal, of course, submitted the mediation questionnaires and discussed the matter briefly over the phone with the mediation lawyer from San Francisco, I believe. And then they issued a determination that this case wasn't appropriate for mediation. I have to say, and I'll let Mr. Mark speak to this if he'd like, but it's a difficult case for either the association or Mr. Barrera to settle when the charges made against them are so significant and so unfounded. Any indication that there is truth or validity to them would be untenable. And from our perspective, that has been our approach throughout the time, and that may be why the Ninth Circuit Mediation Department determined this wasn't appropriate for mediation. Dave, thank you. Okay. Now, I was going to say, if you want to have some peace with the man sitting at the table, you better cede him the time because you've left him 144 seconds. Thank you, Your Honor. Thank you. Thank you. So how much time was it you'd been hoping to get? He said four to five. Let's put four on the clock and see what happens. All right. Thank you, Your Honor. I appreciate that. Joel Mark for defendants and appellees, Linda Ritchie and Frank Barrera. First of all, as to Ms. Ritchie, I would like to point out and remind the Court that she was excused from this matter on summary judgment on the additional ground of statute of limitations, and therefore I would like to remind the Court and request that any opinion which come out of this that might send the case forward does so without her continued presence. Second of all, on the issue of question of use, was use alone sufficient? In this case, what use was was defined in the HOA organic documents, the rules and regulations, the CCNRs and everything else, which were available to everybody she was bound to, and they were in evidence in this case and available to the jury. So if anybody needed to know what use meant, it was available for them all on its own. The problem I have with the addition of the word enjoy in this case came to mind. I live in a lovely HOA community in Ventura County, and about five, six years ago I got a citation. It was time to repaint my mailbox because it was bringing the property values of all my neighbors down, and I didn't enjoy that one bit, and my letter to the board expressed that lack of enjoyment. But I recognized I had agreed as part of my use that I would maintain my property, and I went out and I had the mailbox painted. If you're going to get into jury instructions which add the word enjoy, then we have to be prepared to go on and define what enjoy means beyond use, and that means what we suggested as intended. But if you were treated differently from all the other residents in your subdivision, how would you feel about that? Let me get to that. Of course, none of us would feel good about being treated differently. And I think... That action will under the statute. I think I'll leave that question to the answer. I'll leave that answer to the one my colleague gave. But let's get back to the question that was asked about what was the quality of the evidence here. And in this case, no citation written by my client was ever rebutted by the plaintiff during the course of the trial or established that it wasn't earned by her conduct or the conduct of her family. Not once. No citation about the boat. Oh, excuse me. The first citation about the boat was after she bought it, but before it was registered under her name. So as far as Mr. Barrera knew, when he wrote the first citation on that boat, it was owned by another gentleman who was Caucasian. So was her contention at that trial was basically, yes, I might have gotten these citations, possibly I didn't rebut your evidence that they were properly issued, but I was treated differently? Not once. Well, I assume that's what it was, but not once did she establish she went through the grievance procedure or the redress procedure, except one or two times when she conceded that she had done the conduct. She was not the leader of citations during the period of time where she was getting citations that she objects to. And the leader who got the most was not African-American. Jumping to the issue of the summary judgment granted on the 1983 claim, as I understand that the opinion turned on the question of whether or not your clients were state actors, right? Yes. It didn't turn on anything dealing with, say, some defense of qualified good faith immunity? That's correct. It was state action, and we never got to the other questions. The court felt, and we argued, that they hadn't established that this was a state acting or acting under the impronter of the state. In fact, Mr. Pereira's testimony was every time something came up, he would call the sheriff or tell the people to call the sheriff because he wasn't going to get involved. Okay. Now just a little past your four minutes, if you want one more sentence, you've got it. No, Your Honor, it's gone on long enough. Thank you very much. Okay. Thank you. Response? Mr. Hagan. Thank you, Your Honor. I just want to go through some of the points that were made by both counsel. Mr. Baker said that we had a moving target. Sometimes there was an interference with the lease. Sometimes there was property rights. There was not a moving target. We started with both 42 U.S.C. 1981 and 42 U.S.C. 1982, and we got into an argument over whether interference with the lease meant that the lease absolutely had to be breached, not with an interference in such a way that might lead to a breach. And we had both of those in the first trial, including the word benefits in 1982. And in the pretrial, Judge Worley suggested that she thought the 1981 action was really weak  So I agreed to dismiss that, but there wasn't a moving target there. The word use can be more extensive than the lease, but they don't know that. The jury, if I buy a car and I get to drive it, that's fine. That's a use. If I get parking with the car, it doesn't mean that's necessarily a use unless the judge describes it. It is really the job of the court to explain a word like use. It's not the job of the jury to go back and go, what does this word mean? It has a fairly obvious meaning. Now you're over time, so if you'd like to sum up. Okay. Real quick, the court did not use use and enjoyment interchangeably, and they said that nobody disputed that the case included benefits. That's not the way it's supposed to work. It's supposed to be explained to the jury, not by negative inference. And let's see. We did have a settlement conference, but it was 100% futile. And finally they said, they talked about, Mr. Marks talked about defining the word enjoy. They would have to define it. The court would not, for me, define the word use. And I think if I'm stuck with the word use, I ought to at least have the court give the jury some definition rather than me arguing to the jury about a definition. Okay, thank you. Thank both sides for their arguments. Smith v. Heritage Rancher Owners Association now submitted for decision. And that completes our argument for the day. Thank you. Thank you. All rise.
judges: W. Fletcher, Gould, Lemelle